UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re:

Michael A. Gral[1],

       Debtor-in-Possession.

Case No. 16-21329
Chapter 11

Jointly Administered

---

Park Bank,

       Plaintiff,

v.

Michael A. Gral,

       Defendant.

Adversary Case No: 18-02221

---

## ANSWER AND COUNTERCLAIM

---

1.    Answering paragraph 2, denies knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies same.

2.    Denies the allegations in paragraphs 9, 15, 17, 20(d), 20(e), 20(f), 20(i), 24, 25, 26, 29, 40, 52, 53, 54, 55, 56, 58, 60, 61, 62, 63, 64, 65 and 66.

3.    Answering paragraph 20(g) and (h), denies same affirmatively alleging that plaintiff is not in a position to know whether or not defendant was aware of anything.

---

[1] The court is jointly administering *In re Michael A. Gral*, Case No. 16-21329 and *In re Gral Holdings Key Biscayne, LLC,* Case No. 16-21330; and, separately, the court is jointly administering *In re Michael A. Gral*, Case No. 16-21329 and *In re Capital Ventures, LLC*, Case No. 16-21331. **This pleading relates only to *In re Michael A. Gral,* Case No. 16-21329.**

Law Offices of Jonathan V. Goodman
788 North Jefferson Street - Suite 707
Milwaukee, WI 53202-3739
PH: (414) 276-6760 - FX: (414) 287-1199
e-mail: jgoodman@ameritech.net

4. Answering paragraphs 20(j), 21, 22, denies knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies same.

5. Answering paragraphs 27, denies knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies same.

6. Answering paragraphs 13, 33, 34, 35, 36, 37, 38, 43, 44, 45, 49 and 51, denies same as stating legal conclusions.

7. Answering paragraphs 32, 42, 50 and 57, reiterates and realleges its admissions, denials and allegations to paragraphs 1-56.

## Counterclaim

8. Defendant reiterates and realleges paragraphs 1, 3, 4, 5 and 6, of the Amended Complaint.

9. Plaintiff holds a mortgage in the amount of $250,000.00 on the Defendant's homestead, a copy of which is attached hereto as Exhibit "A" (the "Mortgage").

10. The Defendant valued his homestead at $1,025,000.00 in his schedules. Defendant also claimed a homestead exemption of $150,000.00 in his schedules.

11. Exhibit "A" states that Plaintiff's Mortgage is subordinate to any homestead exemption.

12. Defendant's homestead is subject to first and second mortgages totaling $961,350.46 as of February 20, 2016, which are also senior to the interest of the Plaintiff.

13. Accordingly, there is no less than $1,111,350.46 in interest in the homestead, which is senior to the interest of the Plaintiff.

14. The Plaintiff's interest in the Defendant's homestead has no value.

15. Plaintiff's lien on the Defendant's homestead must be stripped because there is no equity for Plaintiff's interest to attach.

WHEREFORE, Defendant demands judgment dismissing Plaintiff's Complaint, for judgment declaring that Plaintiff's lien on the Defendant's homestead is stripped from the title, for costs and disbursements, and for such other relief that the court deems just and equitable.

Dated this 29th day of October, 2018.

LAW OFFICES OF JONATHAN V. GOODMAN
Attorneys for Defendant

By: _____
Jonathan V. Goodman

Law Offices of Jonathan V. Goodman
788 North Jefferson Street - Suite 707
Milwaukee, WI 53202-3739
PH: (414) 276-6760 - FX: (414) 287-1199
e-mail: jgoodman@ameritech.net

Financial Link®.
© 2009 Wisconsin Bankers Association / Distributed by FIPCO®

DOCUMENT NO.

## REAL ESTATE MORTGAGE
(Use For Consumer or Business Transactions)

MICHAEL A. GRAL AND JULIA G. GRAL AS TRUSTEES OF THE MICHAEL A. GRAL AND JULIA G. GRAL LIVING TRUST

("Mortgagor," whether one or more), whose address is
1437 N PROSPECT AVENUE, SUITE 100, MILWAUKEE, WI 53202

mortgages, conveys, assigns, grants a security interest in and warrants to
Park Bank
7540 W Capitol Drive, Milwaukee, WI 53226
("Lender") in consideration of the sum of
Two Hundred Fifty Thousand and 00/100 Dollars
($ 250,000.00 ), loaned or to be loaned to (1) Gral Investment Company, LLC & (2) Integral Investments Prospect, LLC and (3) Integral Investments Silver Spring, LLC
("Borrower," whether one or more) by Lender, evidenced by Borrower's note(s) or agreement(s) dated (1) June 30, 2008 & (2) July 10, 2009 and (3) July 14, 2010

the real estate described below, together with all privileges, hereditaments, easements and appurtenances, all rents, leases, issues and profits, all claims, awards and payments made as a result of the exercise of the right of eminent domain, all existing and future improvements and all goods that are or are to become fixtures (all called the "Property") to secure the Obligations described in paragraph 5, including, but not limited to, repayment of the sum stated above plus certain other debts, obligations and liabilities arising out of past, present and future credit granted by Lender. SINCE THIS MORTGAGE SECURES ALL OBLIGATIONS DESCRIBED IN PARAGRAPH 5, IT IS ACKNOWLEDGED AND AGREED THAT THIS MORTGAGE MAY SECURE OBLIGATIONS FROM TIME TO TIME IN A DOLLAR AMOUNT GREATER THAN THE DOLLAR AMOUNT STATED ABOVE.

☐ If checked here, and not in limitation of paragraph 5, this Mortgage is also given to secure all sums advanced and re-advanced to Borrower by Lender from time to time under the revolving credit agreement between Borrower and Lender described below.

Recording Area

Name and Return Address
ATTN: CREDIT DEPARTMENT
PARK BANK
20300 WATER TOWER BLVD, SUITE 100
BROOKFIELD, WI 53045

129-0062
Parcel Identifier No.

1. **Description of Property.** (This Property is _____ the homestead of Mortgagor.)
THE NORTHERLY 10 FEET OF LOT 3 MEASURED AT RIGHT ANGLES TO THE NORTHERLY LINE OF SAID LOT 3 AND ALL OF LOT 4, IN BLOCK 2, IN LAKE VIEW HIGHLANDS, BEING A PART OF THE LOTS 2 AND 3 IN FRACTIONAL SECTION 21, IN TOWNSHIP 8 NORTH, RANGE 22 EAST, IN THE VILLAGE OF FOX POINT, MILWAUKEE COUNTY, STATE OF WISCONSIN.

PROPERTY ADDRESS: 6823 N BARNETT LANE, FOX POINT, WI

This is a junior Mortgage.

All rights and remedies of Lender are subject and subordinate to the rights and remedies of the holders of senior indebtedness affecting the Property, and any extensions, renewals, modifications, replacements and refinances of such senior indebtedness.

The rights and remedies of Lender pursuant to this Real Estate Mortgage shall be subject and subordinate to all applicable Mortgagor exemptions, including, without limitation, the exemptions referenced in Chapter 815 of the Wisconsin Statutes and the Federal Bankruptcy Code, except in the instance of (i) Mortgagor's affirmative written waiver of any exemptions; or (ii) Lender's funding of the financing which is the subject of that certain loan commitment letter dated October 29, 2010 issued to Donald A. Gral and Michael A. Gral as such financing may be modified or extended as mutually acceptable to the parties.

☐ If checked here, description continues or appears on attached sheet(s).
☐ If checked here, this Mortgage is a construction mortgage.
☐ If checked here, Condominium Rider is attached.

2. **Title.** Mortgagor warrants title to the Property, excepting only restrictions and easements of record, municipal and zoning ordinances, current taxes and assessments not yet due and 1ST MTG TO ~~JOHNSON~~ BANK AND 2ND MTG TO ~~LINCOLN STATE~~ BANK, its successors and/or assigns, and other encumbrances of record LINCOLN STATE       JOHNSON

3. ~~Escrow Interest will    be paid on escrowed funds if an escrow is required under paragraph 6(a).~~

4. **Additional Provisions.** This Mortgage includes the additional provisions on pages 2 and 3, which are made a part of this Mortgage.

Real Estate Mortgage
Page 1 of 3

**EXHIBIT A**

5. **Mortgage as Security.** This Mortgage secures prompt payment to Lender of (a) the sum stated in the first paragraph of this Mortgage, plus interest and charges, according to the terms of the promissory note(s) or agreement(s) of Borrower to Lender identified in the first paragraph of this Mortgage, and any extensions, renewals or modifications of such promissory note(s) or agreement(s), plus (b) to the extent not prohibited by the Wisconsin Consumer Act, if applicable, all other debts, obligations and liabilities arising out of credit previously granted, credit contemporaneously granted and credit granted in the future primarily for personal, family or household purposes by Lender to any Mortgagor, to any Mortgagor and another or to another guaranteed or endorsed by any Mortgagor and agreed in documents evidencing the transaction to be secured by this Mortgage, plus all interest and charges, plus (c) all other debts, obligations and liabilities arising out of credit previously granted, credit contemporaneously granted and credit granted in the future other than primarily for personal, family or household purposes by Lender to any Mortgagor, any Mortgagor and another or to another guaranteed or endorsed by any Mortgagor, plus all interest and charges, plus (d) to the extent not prohibited by the Wisconsin Consumer Act or Chapter 428, Wisconsin Statutes, if applicable, all costs and expenses of collection or enforcement (all called the "Obligations"). This Mortgage also secures the performance of all covenants, conditions and agreements contained in this Mortgage. Unless otherwise required by law, Lender will satisfy this Mortgage upon request by Mortgagor if (a) the Obligations have been paid according to their terms, (b) any commitment to make future advances secured by this Mortgage has terminated, (c) Lender has terminated any line of credit under which advances are to be secured by this Mortgage, and (d) all other payments required under this Mortgage and the Obligations and all other terms, conditions, covenants, and agreements contained in this Mortgage and the documents evidencing the Obligations have been paid and performed.

6. **Taxes.** ~~To the extent not paid to Lender under paragraph 8(a),~~ Mortgagor shall pay before they become delinquent all taxes, assessments and other charges which may be levied or assessed against the Property, against Lender upon this Mortgage or the Obligations or other debt secured by this Mortgage, or upon Lender's interest in the Property, and deliver to Lender receipts showing timely payment.

7. **Insurance.** Mortgagor shall keep the improvements on the Property insured against direct loss or damage occasioned by fire, flood, extended coverage perils and such other hazards as Lender may require, through insurers reasonably satisfactory to Lender, in amounts, without co-insurance, not less than the unpaid balance of the Obligations or the full replacement value, whichever is less, and shall pay the premiums when due. The policies shall contain the standard mortgagee and lender loss payee clauses in favor of Lender, shall insure Lender notwithstanding any defenses of the insurer against Mortgagor ~~and, unless Lender otherwise agrees in writing, the original of all policies covering the Property shall be deposited with Lender.~~ Subject to Lender's satisfaction, Mortgagor is free to select the insurance agent or insurer through which insurance is obtained. Mortgagor shall promptly give notice of loss to insurance companies and Lender. All proceeds from such insurance shall be applied, ~~at Lender's option, to the installments of the Obligations in the inverse order of their maturities (without penalty for prepayment) or~~ to the restoration of the improvements on the Property. In the event of foreclosure of this Mortgage or other transfer of title to the Property, in extinguishment of the indebtedness secured hereby, all right, title, and interest of Mortgagor in and to any insurance then in force shall pass to the purchaser or grantee. If Mortgagor fails to keep any required insurance on the Property, Lender may purchase such insurance for Mortgagor, such insurance may be acquired by Lender solely to protect the interest of Lender (it will not cover Mortgagor's equity in the Property), and Mortgagor's obligation to repay Lender shall be in accordance with paragraph 10.

8. **Mortgagor's Covenants.** Mortgagor covenants:
   (a) ~~Escrow. If an escrow is required by Lender, to pay Lender sufficient funds, at such times as Lender designates, to pay when due (1) the~~ estimated annual real estate taxes and assessments on the Property, (2) all property and hazard insurance premiums, (3) flood insurance premiums, if any, (4) if payments owed under the Obligations are guaranteed by mortgage guaranty insurance, the premiums necessary to pay for such insurance, and (5) other items agreed to be included in the escrow. Lender may, at any time, collect and hold such escrow funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Mortgagor's escrow account under the federal Real Estate Settlement Procedures Act of 1974, as amended from time to time, if applicable. Lender may estimate the amount of escrow funds due on the basis of current data and reasonable estimates of future expenditures of future escrow account funds or as otherwise required by applicable law. Lender shall apply the escrowed funds against taxes, assessments and insurance premiums when due or as otherwise required by law. Escrowed funds may be commingled with Lender's general funds. If the escrowed funds held by Lender exceed the amount permitted to be held by applicable law, Lender shall account to Mortgagor for the excess escrowed funds in a manner determined by Lender or as otherwise required by applicable law. If the escrowed funds held by Lender at any time are not sufficient to pay the escrow account items when due, Lender may notify Mortgagor in writing, and Mortgagor shall pay to Lender the amount necessary to make up the deficiency in ~~a manner determined by Lender or as otherwise required by applicable law;~~
   (b) Condition and Repair. To keep the Property in good and tenantable condition and repair, and to restore or replace damaged or destroyed improvements and fixtures;
   (c) Liens. To keep the Property free from liens and encumbrances superior to the lien of this Mortgage and not described in paragraph 2;
   (d) Other Mortgages. To perform all of Mortgagor's obligations and duties under any other mortgage or security agreement on the Property and any obligation to pay secured by such a mortgage or security agreement;
   (e) Waste. Not to commit waste or permit waste to be committed upon the Property or abandon the Property;
   (f) ~~Conveyance. Not to sell, assign, lease, mortgage, convey or otherwise transfer any legal or equitable interest in all or part of the Property, or permit the same to occur without the prior written consent of Lender and, without notice to Mortgagor, Lender may deal with any transferee as to its interest in the same manner as with Mortgagor, without in any way discharging the liability of Mortgagor under this Mortgage or the Obligations;~~
   (g) Alteration or Removal. Not to remove, demolish ~~or materially alter any part of~~ the Property, without Lender's prior written consent, ~~except Mortgagor may remove a fixture, provided the fixture is promptly replaced with another fixture of at least equal utility;~~
   (h) Condemnation. To pay to Lender all compensation received for the taking of the Property, or any part, by condemnation proceeding (including payments in compromise of condemnation proceedings), and all compensation received as damages for injury to the Property, or any part. The compensation shall be applied ~~in such manner as Lender determines~~ to rebuilding of the Property ~~or to the Obligations in the inverse order of their maturities (without penalty for prepayment);~~
   (i) Inspection. Lender and its authorized representatives may enter the Property at reasonable times to inspect it, and at Lender's option to repair or restore the Property and to conduct environmental assessments and audits of the Property;
   (j) Laws. To comply with all laws, ordinances and regulations affecting the Property;
   (k) Subrogation. That Lender is subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the proceeds of the note(s) or agreement(s) identified in the first paragraph of this Mortgage; and
   (l) ~~Leases. To pay and perform all obligations and covenants under and pursuant to the terms of each lease of all or any part of the Property~~ required of Mortgagor, and to not cancel, accept a surrender of, modify, consent to an assignment of the lessee's interest under, or make any other assignment or other disposition of, any lease of all or any part of the Property or any interest of Mortgagor in the lease and to not collect or ~~accept any payment of rent more than one month before it is due and payable.~~ **except as previously disclosed to Lender in writing.**

9. **Environmental Laws.** Mortgagor represents, warrants and covenants to Lender (a) that during the period of Mortgagor's ownership or use of the Property no substance has been, is or will be present, used, stored, deposited, treated, recycled or disposed of on, under, in or about the Property in a form, quantity or manner which if known to be present on, under, in or about the Property would require clean-up, removal or some other remedial action ("Hazardous Substance") under any federal, state or local laws, regulations, ordinances, codes or rules ("Environmental Laws"); (b) that Mortgagor has no knowledge, after due inquiry, of any prior use or existence of any Hazardous Substance on the Property by any prior owner of or person using the Property; (c) that, without limiting the generality of the foregoing, Mortgagor has no knowledge, after due inquiry, that the Property contains asbestos, polychlorinated biphenyl components (PCBs) or underground storage tanks; (d) that there are no conditions existing currently or likely to exist during the term of this Mortgage which would subject Mortgagor to any damages, penalties, injunctive relief or clean-up costs in any governmental or regulatory action or third-party claims relating to any Hazardous Substance; (e) that Mortgagor is not subject to any court or administrative proceeding, judgment, decree, order or citation relating to any Hazardous Substance; and (f) that Mortgagor in the past has been, at the present is, and in the future will remain in compliance with all Environmental Laws. Mortgagor shall indemnify and hold harmless Lender, its directors, officers, employees and agents from all loss, cost (including reasonable attorneys' fees and legal expenses), liability and damage whatsoever directly or indirectly resulting from, arising out of, or based upon (i) the presence, use, storage, deposit, treatment, recycling or disposal, at any time, of any Hazardous Substance on, under, in or about the Property, or the transportation of any Hazardous Substance to or from the Property, (ii) the violation or alleged violation of any Environmental Law, permit, judgment or license relating to the presence, use, storage, deposit, treatment, recycling or disposal of any Hazardous Substance on, under, in or about the Property, or the transportation of any Hazardous Substance to or from the Property, or (iii) the imposition of any governmental lien for the recovery of environmental clean-up costs expended under any Environmental Law. Mortgagor shall immediately notify Lender in writing of any governmental or regulatory action or third-party claim instituted or threatened in connection with any Hazardous Substance on, in, under or about the Property.

10. **Authority of Lender to Perform for Mortgagor.** If Mortgagor fails to perform any of Mortgagor's duties set forth in this Mortgage, including, without limitation, preserving and insuring the Property, not committing waste or abandoning the Property, keeping the Property free of liens or encumbrances other than those approved by Lender, keeping the Property in good and tenantable condition and repair, and complying with all laws, ordinances and regulations affecting the Property, Lender may after giving Mortgagor any notice and opportunity to perform which are required by law, perform the covenants or duties or cause them to be performed, or take such other action as may be necessary to protect Lender's interest in the Property and to secure and repair the Property. Unless prohibited by the Wisconsin Consumer Act, if applicable, such actions may include, without limitation, assessing the value of the Property, paying liens that become superior to this Mortgage and making any other payments required, signing Mortgagor's name, engaging an attorney, appearing in court and paying reasonable attorneys fees, and entering the Property to make repairs, change locks, replace and board up doors and windows, drain water from pipes, eliminate building code violations and dangerous conditions and maintain appropriate utilities to the Property. Any such amounts expended by Lender shall be due on demand and secured by this Mortgage, bearing interest at the highest rate stated in any document evidencing an Obligation, but not in excess of the maximum rate permitted by law, from the date of expenditure by Lender to the date of payment by Mortgagor.

11. **Default; Acceleration; Remedies.** If (a) there is a default under any Obligation secured by this Mortgage, or (b) Mortgagor fails timely to observe or perform any of Mortgagor's covenants or duties contained in this Mortgage, then, at the option of Lender each Obligation will become immediately due and payable unless notice to Mortgagor or Borrower and an opportunity to cure are required by § 425.105, Wis. Stats., if applicable, or the document evidencing the Obligation and, in that event, the Obligation will become due and payable if the default is not cured as provided in that statute or the document evidencing the Obligation or as otherwise provided by law. If Lender exercises its option to accelerate, the unpaid principal and interest owed on the Obligation, together with all sums paid by Lender as authorized or required under this Mortgage or any Obligation, shall be collectible in a suit at law or by foreclosure of this Mortgage by action, or both, or by the exercise of any other remedy available at law or equity.

12. **Waiver and Consent.** Lender may waive any default without waiving any other subsequent or prior default by Mortgagor. Unless prohibited by the Wisconsin Consumer Act, if applicable, each Mortgagor who is not also a Borrower expressly consents to and waives notice of the following without affecting the liability of any such Mortgagor: (a) the creation of any present or future Obligations, default under any Obligations, proceedings to collect from any Borrower or anyone else, (b) any surrender, release, impairment, sale or other disposition of any security or collateral for the

**\*following payment in satisfaction of all mortgage liens senior to the lien of this mortgage.**

Obligations, (c) any release or agreement not to sue any guarantor or surety of the Obligations, (d) any failure to perfect Lender's security interest in or realize upon any security or collateral for the Obligations, (e) any failure to realize upon any of the Obligations or to proceed against any Borrower or any guarantor or surety, (f) any renewal or extension of the time of payment, (g) any determination of the allocation and application of payments and credits and acceptance of partial payments, (h) any application of the proceeds of disposition of any collateral for the Obligations to any obligation of any Borrower secured by such collateral in such order and amounts as it elects, (i) any determination of what, if anything, may at any time be done with reference to any security or collateral, and (j) any settlement or compromise of the amount due or owing or claimed to be due or owing from any Borrower, guarantor or surety.

13. Power of Sale. In the event of foreclosure, Lender may sell the Property at public sale and execute and deliver to the purchasers deeds of conveyance pursuant to statute. **Subject to the rights of lenders having prior senior mortgage liens,**

14. Assignment of Rents and Leases. Mortgagor conveys, assigns and transfers to Lender, as additional security for the Obligations, all leases of all or any part of the Property, whether oral or written, now or hereafter entered into by Mortgagor, together with any and all extensions and renewals of any leases, and all rents which become or remain due or are paid under any agreement or lease for the use or occupancy of any part or all of the Property. Until the occurrence of an event of default under this Mortgage or any Obligation, Mortgagor has a license to collect the rents, issues and profits (the "Rents") from the Property. To the extent not prohibited by the Wisconsin Consumer Act, if applicable, upon or at any time after the occurrence of such an event of default and the expiration of any applicable cure period described in paragraph 11, and lapse of any applicable grace, notice or cure period provided in any document evidencing such Obligation, the license granted Mortgagor to collect the Rents shall automatically and immediately terminate and Mortgagor shall hold all Rents (whether paid before or after an event of default) in trust for the use and benefit of Lender, and Lender may, at its option, without any further notice, either in person or by agent, with or without taking possession of or entering the Property, with or without bringing any action or proceeding, or by a receiver to be appointed by a court, collect all of the Rents payable under the leases. All such payments shall be applied in such manner as Lender determines to payments required under this Mortgage and the Obligations. To the extent not prohibited by the Wisconsin Consumer Act, if applicable, this assignment shall be enforceable and Lender shall be entitled to take any action to enforce the assignment (including notice to the tenants to pay directly to Lender or the commencement of a foreclosure action) without seeking or obtaining the appointment of a receiver or possession of the Property. Any entering upon and taking possession of the Property, any collection of Rents, and any application of Rents as allowed by this Mortgage shall not cure or waive any default or waive, modify or affect notice of default under this Mortgage or invalidate any act done pursuant to such notice, and not in any way operate to prevent Lender from pursuing any other remedy which it now or hereafter may have under the terms or conditions of this Mortgage, any document evidencing any Obligation or any other instrument securing the Obligations.

15. Receiver. Upon the commencement or during the pendency of an action to foreclose this Mortgage, or enforce any other remedies of Lender under it, without regard to the adequacy or inadequacy of the Property as security for the Obligations, Mortgagor agrees that the court may appoint a receiver of the Property (including homestead interest) without bond, and may empower the receiver to take possession of the Property and collect the rents, issues and profits of the Property and exercise such other powers as the court may grant until the confirmation of sale, and may order the rents, issues and profits, when so collected, to be held and applied as the court may direct.

16. Foreclosure Without Deficiency Judgment. If the Property is a one-to-four family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Mortgagor agrees to the provisions of §846.101 Wis. Stats., and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the Property is other than a one-to-four family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Mortgagor agrees to the provisions of §846.103, Wis. Stats., and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

17. Expenses. To the extent not prohibited by the Wisconsin Consumer Act or Chapter 428, Wisconsin Statutes, if applicable, Mortgagor shall pay all reasonable costs and expenses before and after judgment, including without limitation, attorneys' fees, fees and expenses for environmental assessments, inspections and audits, and fees and expenses for obtaining title evidence incurred by Lender in protecting or enforcing its rights under this Mortgage.

18. Successors and Assigns. The obligations of all Mortgagors are joint and several. This Mortgage benefits Lender, its successors and assigns, and binds Mortgagor(s) and their respective heirs, personal representatives, successors and assigns.

19. Interpretation. The validity, construction and enforcement of this Mortgage are governed by the internal laws of Wisconsin except to the extent such laws are preempted by federal law. All references in this Mortgage to sections of the Wisconsin Statutes are to those sections as they may be renumbered from time to time. Invalidity of any provision of this Mortgage will not affect the validity of any other provision. This Mortgage is intended by Mortgagor and Lender as a final expression of this Mortgage and as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Mortgage. This Mortgage may not be supplemented or modified except in writing.

20. Other Provisions. (If none are stated below, there are no other provisions.)

The undersigned agrees to the terms of this Mortgage and acknowledges receipt of an exact copy of this Mortgage.

NOTICE TO CUSTOMER IN A TRANSACTION GOVERNED BY THE WISCONSIN CONSUMER ACT
(a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON ALL THREE PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

Signed and Sealed January 10, 2011
(Date)

MICHAEL A. GRAL AND JULIA G. GRAL LIVING TRUST _____ (SEAL)

Trust
(Type of Organization)

Wisconsin
(State of Organization)

_____ (Organizational I.D. Number, if any)

By: _____ (SEAL)
MICHAEL A GRAL, Trustee

By: _____ (SEAL)
JULIA G. GRAL, Trustee

By: _____ (SEAL)

By: _____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

———— AUTHENTICATION ———— OR ———— ACKNOWLEDGMENT ————

Signatures of _____

authenticated this ___ day of _____

Title: Member State Bar of Wisconsin or _____
authorized under § 706.06, Wis. Stats.

This Instrument was drafted by
CAROL PATRICK FOR PARK BANK

*Type or print name signed above.

STATE OF Wisconsin
County of Milwaukee } ss.

This instrument was acknowledged before me on January 10, 2011
by MICHAEL A GRAL and JULIA G. GRAL
(Name(s) of persons(s))
as Trustee and Trustee
(Type of authority, e.g., officer, trustee, etc., if any)
of MICHAEL A. GRAL AND JULIA G. GRAL LIVING TRUST
(Name of party on behalf of whom instrument was executed, if any)

BETTY J. RASKY
Notary Public, Wisconsin
My Commission Expires 3/27/11

Real Estate Mortgage
Page 3 of 3